UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EARL DAVID METCALF,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | ) | No. 3:10-CV-444<br>(VARLAN/SHIRLEY) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 and 19]. Plaintiff Earl David Metcalf seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On February 12, 2007, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began November 1, 2005. [Tr. 12]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On June 19, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 750-79]. On December 23, 2008, the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: history of surgical treatment of thoracic spine fracture with subsequent surgical removal of hardware; coronary artery disease with stent placement; diabetes mellitus; obstructive sleep apnea (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) and 416.967(b) except he is precluded from climbing ladders; is precluded from more than occasional climbing of stairs; and should avoid extreme temperatures as well as hazards.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on August 27, 1970 and was 35 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and is able to

> communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act from November 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-22].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff makes a single allegation of error. He argues that the ALJ erred by failing to afford proper weight to the opinions of Aaron D. Bussey, M.D. [Doc. 15 at 10]. The Plaintiff argues that Dr. Bussey's opinion – specifically, Dr. Bussey's responses to a Residual Functional Capacity Questionnaire– are entitled to controlling weight as opinions of a treating physician.

The Commissioner maintains that the ALJ's decision is supported by substantial evidence. The Commissioner contends that the ALJ considered Dr. Bussey's opinion in the Questionnaire, but she rejected it because she found it was inconsistent with the overall evidence,

including Dr. Bussey's own clinical records. [Doc. 19 at 11 (citing Tr. 19)].[1]

## V. ANALYSIS

The Plaintiff received treatment for his diabetes at Endocrinology Consultants of East Tennessee from November 6, 2006 through April 16, 2008, for treatment of his diabetes and related conditions. During this period, the Plaintiff was seen by Dr. Bussey and other medical personnel. Plaintiff's blood sugars were consistently noted to be too high during treatment. [Tr. 175-221, 536-555].

In a letter to Habitat for Humanity composed February 8, 2008, Kimberly Lay, PA-C, reported that Plaintiff has been under the care of Endocrinology Consultants for type I diabetes that was diagnosed at age 12. [Tr. 182]. She stated that the Plaintiff: has the known diabetic complications of retinopathy, nephropathy, and neuropathy; has significant macrovascular disease with coronary artery disease; has been a brittle diabetic and suffered from severe fluctuations in blood sugars, even with an insulin pump; has high blood pressure, high cholesterol, and hypoglycemic seizures; suffers from chronic back pain; and has significant social stress due to behavioral problems from his children. Ms. Lay also noted that the Plaintiff has tried working full-time as a carpenter and has attempted to work long hours.

In a similar letter to Habitat for Humanity, also dated February 8, 2008, Dr. Bussey reported that he has known Plaintiff and his wife since November 2006, when he began treating Plaintiff for type I diabetes. [Tr. 181]. Dr. Bussey noted that, as a result of this chronic medical

[1] The Commissioner has noted that after the hearing the Plaintiff submitted additional evidence to the Appeals Council. The Plaintiff makes no mention of this additional evidence or request a sentence six remand pursuant to 42 U.S.C. § 405(g). Thus, the Court finds that the Plaintiff waived any argument for sentence six remand based upon this material. In the alternative, the Court finds that the Plaintiff has failed to demonstrate that the evidence is new or material, as required for a sentence six remand.

condition, the Plaintiff has multiple other complicating medical conditions including heart disease, seizures, kidney damage, and eye damage. Dr. Bussey noted, "[Plaintiff] continues to work as much as possible but is severely handicapped in his ability to earn a living." [Tr 181].

On June 4, 2008, Dr. Bussey completed a form entitled, "Diabetes Mellitus Residual Functional Capacity Questionnaire," ("the Questionnaire"). Of the symptoms listed in the Questionnaire, Dr. Bussey identified Plaintiff's symptoms as fatigue, episodic vision blurriness, excessive thirst, general malaise, retinopathy, extremity pain and numbness, frequency of urination, difficulty thinking/concentrating, headaches, and hyper/hypoglycemic attacks. [Tr. 218]. Dr. Bussey reported that Plaintiff's blood sugars fluctuate despite good compliance and an insulin pump, and Dr. Bussey also stated that the Plaintiff "deals with chronic pain daily which causes elevated blood sugars." [Tr. 218].

In response to a series of yes-no and short-answer questions, Dr. Bussey indicated that: the Plaintiff's impairments lasted or can be expected to last at least 12 months; he is not a malingerer; his experience of pain or other symptoms is frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks; he is incapable of even low stress jobs; his impairments are likely to produce good days and bad days; and he is likely to be absent from work more than four days per month as a result of his impairments or treatment. [Tr. 218-19].

When asked how many city blocks the Plaintiff could walk without rest or severe pain, Dr. Bussey responded that he could walk less than one block. [Tr. 219]. Dr. Bussey opined that the Plaintiff: can sit for a total of less than two hours in an eight-hour working day, 20 minutes at one time; can stand for a total of less than two hours in an eight-hour working day, ten minutes at one time; he needs to include periods of walking around every 20 minutes during an eight-hour

working day, walking three minutes each time; and needs a job that permits shifting positions at will. When asked if the Plaintiff would need unscheduled breaks, Dr. Bussey responded that he would, and in answering a series of follow-up questions, Dr. Bussey indicated that during the breaks he would need to lay down for 30-60 minutes each time.

Dr. Bussey indicated that the Plaintiff: can never stoop (bend), crouch/squat, or lift/carry 20 pounds or more; can rarely climb ladders and stairs; can occasionally twist and lift/carry ten pounds; can frequently lift/carry ten pounds; has significant limitations in doing repetitive reaching, handling, or fingering; must avoid all exposure to soldering fluxes; must avoid even moderate exposure to extreme heat; and must avoid concentrated exposure to extreme cold, high humidity, cigarette smoke, perfumes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. [Tr. 220-21].

The ALJ discussed Plaintiff's treatment under Dr. Bussey extensively, but she concluded that the Questionnaire was not entitled to any weight. The ALJ recognized that Dr. Bussey had been the Plaintiff's primary care physician from January 2004 through June 2007. [Tr. 19]. The ALJ noted that despite the Plaintiff and his wife's complaint of episodes of him "talking out of his head," only one fainting episode was noted in Dr. Bussey's records. [Tr. 19]. The ALJ noted, that despite complaints of blurred vision, the Plaintiff had not sought treatment for this condition. [Tr. 19].

Moreover, the ALJ explained:

> The claimant's use of illicit drugs, as shown by urinary drug tests performed in May 2008 and again in April 2008, detracts from his credibility, as this was a violation of the contract he signed with Dr. Scariano upon initiation of treatment with this physician. The claimant reported in questionnaires that he was unable to do virtually anything, except taking care of his personal grooming chores, and he claimed that he required his wife's assistance at

> times even to do some of these activities. However, he apparently told Dr. Bussey in November 2006 that he was a self-employed carpenter and that he was working "very long hours." This report is consistent with a hospital note of February 2007 stating that the claimant reported that he was hit by a falling rock three days before while he was working on a house "where they were removing some rock." When Mr. Metcalf was consultatively seen by a cardiologist during that hospital visit, the physician noted that the claimant reported that he had some dyspnea when climbing hills, but not with normal activity. He also apparently told Dr. Bussey in December 2007 that he was hunting at night. In a letter of February 2008, a physician's assistant with Dr. Bussey's office, related that despite his multiple medical problems, the claimant had tried to maintain working full time as a carpenter, working long hours. In sum, the claimant's apparent ability, as noted in his medical records, to climb hills, to work removing rock, to work as an self-employed carpenter, and to go hunting, belie the degree of pain and functional limitations that the claimant alleged having. (Exhibit pages 27E-28E, 32E-41E[,] 134F, 237F, 241F, 325F, 487-488F, 494F).

[Tr. 19]

Turning to the Questionnaire, specifically, the ALJ next explained:

> In June 2008, Dr. Bussey completed a questionnaire in which the physician essentially opined that the claimant could not even perform sedentary work (Exhibit pages 456F-459F). No weight is given to this opinion, as it is inconsistent with the overall evidence, including Dr. Bussey's own clinical records, which indicated that the claimant was working full time as a self-employed carpenter for at least a significant length of time after he alleged being unable to perform any work activity, and which indicated that the claimant reported that he was "coon" hunting at night. This opinion is also contradicted by the fact that the claimant was able to sit for more than two hours continuously without any evident discomfort during the hearing.

[Tr. 19].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). And as the Court of Appeals for the Sixth Circuit has recently reaffirmed, the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times." Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam).

In this case, the ALJ focused upon the lack of consistency between Dr. Bussey's answers to the Questionnaire and the record as a whole, as directed by the applicable regulations, see 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). The ALJ considered that, during the alleged period of disability, the Plaintiff had reported that he was working as a

carpenter and assisting in home construction. The ALJ also considered that, during the alleged period, the Plaintiff was hunting.

The ALJ also considered the fact that Plaintiff sat through the hearing without noticeable discomfort, until he was asked about his hearing at which point he remarked he was having a hard time sitting. [Tr.16, 767]. The Plaintiff's ability to sit without accommodation for approximately two hours belies Dr. Bussey's finding that he can only sit for 20 minutes at a time.

Beyond these and other inconsistencies cited by the ALJ, the medical evidence in the record supports discounting Dr. Bussey's extremely restrictive opinion. The Plaintiff was treated by Jack E. Scariano, Jr., M.D., from August 2007 through May 2008, for migraines and back pain. An examination performed August 27, 2007, showed normal muscle tone, full muscle strength, normal sensory exam, normal gait and station with normal arm swing, normal heel to toe walking, and normal tandem walking. [Tr. 299-300]. Subjectively, the Plaintiff complained that he could no longer perform construction work, [Tr. 299], but Dr. Scariano did not find any such limitations. This evaluation from a second treating physician undermines Dr. Bussey's findings in the Questionnaire and supports the ALJ's determination.

Reeta Misra, M.D., and Frank Pennington, M.D., both agency reviewing physicians, found that the Plaintiff could perform medium work, with certain restrictions. [Tr. 307, 340]. While the Court has certainly considered the fact that these physicians did not examine the Plaintiff, the extreme differences between their findings that the Plaintiff is capable of medium work and Dr. Bussey's finding that the Plaintiff cannot perform even sedentary work indicates that Dr. Bussey overestimated the Plaintiff's limitations.

Based upon the foregoing and the record as a whole, the Court finds that Dr. Bussey's findings in the Questionnaire and, to the extent it constitutes a medical opinion, his letter to

Habitat for Humanity were inconsistent with the other substantial evidence in the case record. The ALJ thoroughly explained these inconsistences and gave good reasons for discounting Dr. Bussey's findings. Therefore, the Court finds that the ALJ did not err in his disability determination, and the Court finds that her disability determination is supported by substantial evidence.

## VI. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work, with certain preclusions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 14]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).